WADDELL, adm'r, &c. *vs.* ELMENDORF and VAN VECHTEN, adm'rs, &c.

The provisions of the revised statutes respecting the presumption of payment of judgments, after a lapse of twenty years, which declare that such presumption of payment may be repelled by proof of payment of some part of such judgment, or of a written acknowledgment of a right of action thereon, within that period, (2 *R. S.* 301,) were not intended to have a retroactive effect, so as to embrace judgments recovered prior to the passage of the revised statutes.

In regard to past judgments, the law was intended to remain untouched, but a new rule was established as to future judgments.

Accordingly *Held* that in an action upon a judgment recovered in the year 1810, the presumption of payment arising from lapse of time might be rebutted by any evidence showing a continuing indebtedness.

MOTION by the defendants, upon a case, for a new trial. The plaintiff, as administrator of Henry Waddell, sued the defendants as administrators of Lucas Elmendorf deceased, on a judgment against Elmendorf, entered in the supreme court, by confession, on a bond and warrant of attorney, on the 13th of November, 1810, for $2744,40, besides costs. The bond was dated July 22, 1809, and was executed by Lucas Elmendorf and Henry Waddell. The defendants pleaded *nul tiel record,* and payment. The cause was tried in January, 1850, and a verdict found for the plaintiff. The facts appearing on the trial, and the legal questions arising therefrom, are stated in the opinions of EDMONDS, P. J. and MITCHELL, J

*B. W. Bonney,* for the plaintiff.

*S. Sherwood,* for the defendants.

EDMONDS, P. J. Some of the points raised on the argument we need not consider ; for they relate to alledged errors in the judge's charge : and as no exception was taken to the charge, such errors, if there are any, must now be disregarded.

The main point involved arises out of the admission of evidence, and the refusal of the judge to charge as requested, in reference to the kind of evidence that was allowable, to rebut

the presumption of payment. The defendant insisted below, and now contends, that that presumption could be rebutted only by proof of payment of part or an acknowledgment in writing; and that is the only point which is legitimately before us. The judge charged, that if an admission of indebtedness was made by the defendant in the judgment within 20 years before the commencement of the suit, the plaintiff was entitled to recover. To this there was no exception. But he refused to charge that the presumption of payment could only be repelled by showing payment, or by an admission in writing. To that refusal there was an exception, and thus the question is raised before us.

It was conceded, for the purposes of the argument, that before the act of 1821, presumption of payment would apply to a judgment after 20 years, and that that presumption would be rebutted by any evidence showing a continuing indebtedness. The act of 1821 was incorporated into the revised statutes, and is operative upon this case only as part of them. And by them it is enacted that the presumption of payment shall apply to all judgments of a court of record in this state rendered before April 3, 1821, and to all such judgments rendered before 1st January, 1830, in the same manner as such presumption applies to sealed instruments, (2 *R. S.* 301, § 46.) And that after the expiration of 20 years from the time a right of action shall accrue upon any sealed instrument for the payment of money, such right shall be presumed to have been extinguished by payment: but such presumption may be repelled by proof of payment of some part, or by proof of a written acknowledgment of such right of action within that period. (*Id.* § 48.)

These two sections, put together as I have now stated them, would seem to justify the assumption of the defendant on the argument. But there is an intervening section which must not be overlooked, and which tends very largely to giving a construction and application to the 48th section. Section 46, by its very terms, relates to judgments rendered before the revised statutes took effect. Section 47, in the same manner relates only to judgments rendered after that time, and section 48 is silent upon

Waddell *v.* Elmendorf.

the point of time when it shall operate. And being thus silent, the question is, does it relate to the past or the future?

One rule for construing statutes, well established is, that although the general words in which a law is framed are broad enough to include contracts already in existence, as well as those afterwards made, yet it shall not be so construed as to give it a retrospect; especially where the language of the act does not in express terms authorize such retrospect. (*Quackenbush* v. *Danks*, 1 *Denio*, 128. 1 *Comst.* 129. *Sackett* v. *Andross*, 5 *Hill*. 334. *Dash* v. *Van Kleeck*, 7 *John.* 477. *Johnson* v. *Burrell*, 2 *Hill*, 239. *Butler* v. *Palmer*, 1 *Id.* 324. *Terrington* v. *Hargreaves*, 3 *Moore & Payne*, 137.)

Another consideration is that the legislature has no right to pass a law impairing the obligation of a contract. It is unnecessary to inquire whether the judge was right in charging the jury that it would be unconstitutional, and the legislature have no power to pass a law which should retroact so as to render a judgment void which would be valid before its passage; because no exception was taken to the charge. But the consideration may be invoked in this connection for the purpose of inquiring into the intention of the statute. And as the question how far the legislature may go in such cases, and the dividing line between rights which they cannot touch and remedies which they may, is yet faint and obscure, and has never been clearly defined, we may well infer that it was not the intention to involve their enactment, which could otherwise find aliment enough in all the difficulties of that still vexed question. But further, it seems to me manifest from the terms of the enactments in question; of the title embracing those sections; and of the whole of the chapter in which they are found, that it was not the intention to give to section 48 a retroactive effect. Past judgments were provided for in section 46, by re-enacting the statute of 1821, and extending its provisions to judgments rendered after 1821 and prior to 1830. Future judgments are provided for in section 47. In respect to them it is expressly enacted by that section, that the presumption of payment may be repelled only by proof of payment or written acknowledgment. But in regard to existing

judgments there was no such restriction; the presumption applied in the same manner as it did to sealed instruments. Now, as to such instruments, the presumption, according to the law as it then stood, could be repelled by any evidence of a subsisting indebtedness, and was not restricted to proof of payment, or a written acknowledgment. And it is evident that in regard to past judgments, the law was intended to be untouched, and that a new rule was to be introduced as to future judgments only.

Again, if section 48, which relates only to sealed instruments, was to affect and be applicable to judgments at all, why not as to future as well as to past judgments? Yet it is not; for future judgments are provided for by a complete system in section 47; and section 48, if it relates to judgments at all, can relate only to past ones. It can hardly be supposed that there was any such intention, or that any such discrimination was designed. It would be difficult to find an adequate reason, or even apology for it. The whole chapter carries through all its provisions an evident intention not to have them retroactive. After enacting in article 1, in respect to the "time of commencing actions relating to real property;" in article 2, in respect to the "time of commencing actions for the recovery of any debt or demand, or for damages only:" in article 3, in respect to the "time of commencing actions for penalties and forfeitures:" the last section, (45) of article 2, enacts that none of these provisions shall apply to cases where the right of action shall have already accrued, but the same shall be subject to the laws then in force.

Why should not the principle which thus pervades the whole of the preceding articles, be made expressly to apply to the 5th article, which related to the "presumption of payment arising from the lapse of time?" Was it because the legislature intended to apply to judgments and sealed instruments, a rule different from that provided in all other cases? If so, why this departure from a principle so clearly just, and so clearly preserved throughout? It would be difficult to find a reason; but a solution of the first question is easily to be found in such a construction of the statute as will give to sections 47 and 48 an

application to future cases only, and to section 46, standing by itself, an application to past judgments as its language clearly imports.

There is, however, another consideration which must not be overlooked. The revisers recommended that sealed instruments should be put upon the same footing with simple contract debts, in respect to the statute of limitations; and their provision to that effect would have been part of section 18 of article 2, and then section 45, (the last one of article 4,) would have applied, and this new limitation on sealed instruments, would then have applied only to causes of action arising after the statute took effect. The legislature, however, refused to adopt the suggestion, and instead of it enacted section 48, for the sole purpose of defining with more accuracy, the extent of the limitation, which had been left indefinite by the courts, ranging between 18 and 20 years, and even a less period. (*Ex'rs of Clark* v. *Hopkins*, 7 *John.* 556.) It would be giving to the statute an effect far beyond what was intended, now to hold that an enactment aiming only at rendering definite a period of time before uncertain, had introduced into the statute an entirely new principle, and which had been carefully excluded in all other cases.

These various considerations have led me to the conclusion that the judge was right in his ruling on the trial; that section 46 of the revised statutes, stands alone, and is independent of any connection with section 48, and therefore the motion for a new trial must be denied.

MITCHELL, J. To repel the presumption of payment, arising from lapse of time, the plaintiff proved the payment of interest indorsed on the original bond, to July 22, 1818; and proved by Sylvanus Miller that he went to the office of Lucas Elmendorf, at Kingston, in the summer or fall of 1835, and produced the bond, and told him he had come to have it arranged; and that Elmendorf looked at it. Mr. Miller showed him a calculation of interest from the date of the last payment made, on a separate piece of paper, and left it with Elmendorf, and said that

was the balance which he demanded. Elmendorf said there was not so much due ; that he had an offset, and would make out his account ; that. he would send down an account of his offset, and settle his account, but said nothing of the amount of his offset. The plaintiff also proved letters of Mr. Elmendorf, in 1813 and 1818, addressed to Henry Waddell, complaining of his straitened circumstances, and urging him not to apply to his account moneys collected by him, as he, Elmendorf, needed them to satisfy a Mr. Reed, who would not wait, and who must be paid or have his whole debt discharged by execution. It was also shown that judgments were standing against Mr. Elmendorf, to the amount of $198,000, and twenty-one of them, amounting to over $40,000, prior to Waddell's judgment. This evidence was excepted to. If legally admissible, it was abundant evidence to justify a jury in finding that the debt was not paid in 1835, when Mr. Miller called on Mr. Elmendorf ; notwithstanding the other evidence brought out on cross-examination by the defendants, and which somewhat tended to show an ability in Elmendorf to pay. It was also shown that the judgment was revived by the executor of Mr. Waddell, by scire facias, on the 31st of March, 1821 ; and that the executor commenced a suit on the bond, in July, 1836, to which a plea was put in ; that he died in 1843, and Elmendorf died soon afterwards. These plaintiffs then sued the defendants on the bond, and the defendants pleaded that a judgment was recovered on the bond ; upon which that suit was discontinued, and this suit commenced on the judgment.

The defendants insist that the revised statutes apply to this case, and that by them the judgment is presumed to be paid ; and that no proof to repel that presumption can be produced, except actual payment, or a written acknowledgment of the debt.

On the 3d of April, 1821, (*Laws of* 1821, *p.* 246, § 4,) a law was passed, declaring that the presumption of payment should apply to all judgments in any court of record of this state, to those theretofore rendered, after 20 years from the passage of the act, and to those thereafter to be rendered, after 20 years from the docketing of the judgment, " in the same manner as such

Waddell *v.* Elmendorf

presumption *applies* to sealed instruments." This act is included among the acts repealed by the revised statutes. (3 *R. S.* 144, § 340.) Its place is, however, supplied by the 46th section of title 2, ch. 4, part 3, so far as concerns judgments theretofore entered, which is as follows : " The presumption of payment shall apply to all judgments of a court of record in this state, rendered *before* the 3d day of April, 1821, and to all such judgments rendered *before* this chapter shall take effect as a law, in the same manner as such presumption *applies* to sealed instruments." This is the same rule that the act of 1821 prescribed, and is, so far as it goes, substantially a re-enactment of it. Then as to judgments and decrees rendered after the revised statutes took effect, the 47th section applies, and instead of preserving as to those prospective judgments, the rule adopted in 1821, of the presumption of payment after 20 years in the same manner as such presumption applies to sealed instruments, it makes a new rule, declaring the presumption of payment, as to subsequent judgments, to be *conclusive*, unless repelled by proof of payment of part, or of a *written* acknowledgment within 20 years. The defendants contended that the 48th section forbids the presumption of payment, in case of a sealed instrument, being repelled except by proof of payment, or of a written acknowledgment, and that this was the rule referred to in the 46th section, and so made applicable to all judgments. But it was well answered that the revisers and the legislature must have intended different rules to apply to the cases of past and of future judgments, or they would not specially have prescribed in one section for the past, and that they should be subjected to the presumption of payment applicable to sealed instruments, and then in the following section, which is very carefully worded, have prescribed in entirely different language, another rule for subsequent judgments ; which makes no allusion to the rules as to sealed instruments, but establishes prospectively an iron, unbending rule, that 20 years shall be conclusive evidence of payment, unless the plaintiff proves a payment of part of the judgment, or a written acknowledgment of the indebtedness. If the legislature intended this last rule to

apply also to former judgments, they would have made no distinction between former and future judgments; but would have applied the 47th section not as it does, to "every judgment and decree *hereafter* rendered," but to "every judgment and decree hereafter [*or heretofore*] rendered." This would have comported also with one of the objects of the revisers, which was to simplify the language of the statutes.

Another objection to the defendant's argument, is that the 48th section is not retrospective; that it applies only to cases where the right of action *shall accrue* after the passage of the revised statutes: thus, "After the expiration of twenty years from the time a right of action *shall accrue* upon a sealed instrument for the payment of money such right *shall* be presumed to have been extinguished by payment; but such presumption may be repelled by proof of payment of some part, or by proof of a written acknowledgment of such right of action, within that period." It applies only where the right of action *shall* accrue, namely shall arise, thereafter, and not to cases where it had then already accrued. As to existing or past cases of sealed instruments, it left them to the law as it stood before: as to future cases it established a new rule. The same analogy was applied in the distinction between old and new judgments: the old were left to the law of 1821, and for the new a new rule was established. This also shows that the use of the future tense, as to sealed instruments, was not accidental, but designed, and was meant to limit the applicability of the 48th section to those cases only, in which the cause of action should thereafter accrue. That section can not, therefore, aid the defendant, as the cause of action against him had accrued long before. The defendant, however, argued that this section prevented the proof of unwritten admissions that might be made after the act took effect. The defendant's counsel ably sustained his position that the legislature might constitutionally pass a law thus to prevent subsequent unwritten admissions from affecting even past obligations. But that does not establish that the legislature have done so. They have the power to do so, but

the words used by them do not apply to any past causes of action, but only when "a right of action *shall* accrue."

When the act of 1821 was passed, the presumption of payment arising from lapse of time might be repelled by other evidence besides payment of part and a written acknowledgment of indebtedness; and so it might, unquestionably, before the revised statutes were passed. The rule of presumption applied by those statutes (in the forty-sixth section already quoted,) to old judgments is "in the same manner as such presumption *applies* to sealed instruments." The word "applies," is used in the present tense, and with as much significance as if it read "now applies." The act concerning the revised statutes, (2 *R. S.* 778, § 9,) declares that the term "laws *now in force*," whenever it occurs in the revised statutes, shall be construed to mean the statutes and other laws in force immediately previous to the final *passage* of the chapter containing such term." Part three, containing this chapter, was passed December 10th, 1829, (2 *R. S.* 653, *note*,) and the same rule may, by analogy, and from the reason of the thing, be applied when the law, or rules of law, are referred to in the present tense. Each speak naturally as of the day of the passage of the act, rather than as of the future day when they were to be in actual operation.

The general spirit also of the legislation in the revised statutes, and of the code, since, has been not to make statutes of limitation, or of that nature, retrospective, except in confirmation of decisions of the courts or of principles clearly equitable and just. Thus, section forty-five, in article four, of title two, of chapter four, relating to the time of commencing actions, is, that "the provisions of the *preceding* articles of that title shall not apply to cases where the right of action shall have accrued before the time when that chapter took effect as a law, but the same shall remain subject to the laws then in force." The provisions of the fourth article are excepted, as they afforded a remedy in cases where it was just that there should be one, as to past and future causes of action, and in most of which the law or judicial decision had already afforded a like remedy. But

that section could not be made expressly applicable to the subjects of articles five and six, as they were intended in some cases to apply to old causes of action, and in others to new. It was therefore left to the language of these two articles to determine which rule was intended to apply in any particular case. Thus, section fifty-two is limited to cases where the cause of action "*shall accrue.*" It limits (what no *statute* had *before* done) the time for bringing suits where the relief was in equity only. But section forty-nine is not limited to cases where the cause of action *shall* accrue, but "shall apply to all *suits* hereafter to be brought;" that is, whether the cause of action then existed or not. It relates to cases where there had been a concurrent jurisdiction, both at law and in equity, and makes the limitation the same in both courts. This was adopted as just in itself, and as carrying out the spirit of former decisions. (*See Revisers' Notes*, 3 *R. S.* 705, 2d ed.)

The note of the revisers to the forty-fifth section, states their views very clearly. They say: "It has been held that it is a general principle that statutes apply only to subsequent cases. (*Dash* v. *Van Kleeck*, 7 *John.* 493 *and the cases there cited.*) Although this doctrine, as applied to *statutes of limitations*, has been shaken by the decisions of the supreme court of the United States and of this state, which declare that such statutes are merely remedial; yet it is conceived but just to prevent their having a retroactive effect." They also, in their next note— that to the forty-eighth section, now the forty-sixth and the one in question—refer, as the origin of the forty-sixth section, to "Laws of 1821, p. 246, § 4," and remark that "its language is preserved as to past judgments"—thus clearly showing that they meant the effect of the act of 1821, also to be preserved.

In the same spirit of not allowing laws generally to be retroactive, except when justice requires it, the code establishes a new law of limitation, but expressly declares that it "shall not extend to actions already commenced, or to cases where the right of action has already accrued; but that the

Chase *v.* Washington M. Ins. Co. of Cincinnati.

statutes now in force shall be applicable to such cases" (*Code,* § 73, [66.]

I think the motion for a new trial should be denied, with costs.

EDWARDS, J. concurred.

New trial denied.

[NEW-YORK GENERAL TERM, February 2, 1852.  *Edmonds, Edwards* and *Mitchell,* Justices.]